**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 14 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered September 26, 2017 at |
| | : | No. 1621 WDA 2016, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Mercer County |
| | : | entered August 19, 2016, at No. CP- |
| ANTHONY MACHICOTE, | : | 43-CR-0001958-2003. |
| | : | |
| Appellant | : | ARGUED:  October 24, 2018 |

<u>**OPINION**</u>

**JUSTICE MUNDY**                **DECIDED:  APRIL 26, 2019**

In this matter, Appellant asks this Court to determine whether his sentence was illegal because he was subject to a potential sentence of life without parole, and prior to imposing his sentence, the trial court did not consider the factors enumerated in *Miller v. Alabama*, 567 U.S. 460 (2012), as adopted by this Court in *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) (*Batts I*) and *Commonwealth v. Batts* (*Batts II*), 163 A.3d 410 (Pa. 2017).  The Superior Court concluded that Appellant's challenge in this regard, was moot because he was ultimately not sentenced to life without the possibility of parole.  We conclude the issue is not moot, and the trial court erred when it failed to consider the *Miller* factors on the record when it resentenced Appellant.

This case originates in 2003 when Appellant was 17 years old and a resident at George Junior Republic, a residential treatment facility for at-risk youth.  Appellant and a co-resident, Jeremy Melvin, devised a plan to subdue a night supervisor at the facility in

order to escape. On November 10, 2003, Appellant commenced the scheme and called the night supervisor, Wayne Urey, Jr., to his room. Melvin, who was hiding, attacked Urey from behind, put him in a chokehold, and brought him to the ground. Appellant and Melvin bound and gagged Urey, and proceeded to steal his keys, wallet, and truck. Appellant and Melvin escaped, and Urey ultimately died of suffocation.

Appellant and Melvin turned themselves in later that same day. Appellant was charged with homicide, robbery, and related offenses. On November 3, 2004, Appellant pled guilty to second-degree murder and the remaining charges were dismissed. On January 6, 2005, Appellant was sentenced to life without the possibility of parole.[1] Appellant did not appeal his sentence.

On January 11, 2006, Appellant filed a timely *pro se* Post Conviction Relief Act (PCRA) petition challenging the voluntariness of his plea, and asserting ineffective assistance of counsel. A hearing was held, and Appellant's petition was denied. The Superior Court affirmed the PCRA court's decision, and this Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Machicote*, 929 A.2d 242 (Pa. Super. 2007), *appeal denied*, 932 A.2d 1287 (Pa. 2007).

---

[1] Appellant was sentenced pursuant to the following statute.

**§ 1102. Sentence for murder and murder of unborn child**

. . .

**(b) Second degree.--**A person who has been convicted of murder of the second degree or of second degree murder of an unborn child shall be sentenced to a term of life imprisonment.

. . .

18 Pa.C.S. § 1102(b). Additionally, pursuant to 61 Pa.C.S. § 6137(a)(1), the Board of Probation and Parole was prohibited from paroling any defendant "condemned to death or serving life imprisonment[.]" *Id.*

Before turning to the subsequent procedural history leading to the instant appeal, a brief discussion of the evolution of juvenile sentencing cases is required. We begin with cases decided by the United States Supreme Court over the last decade and a half and the categorical rules that have emerged in their wake, as they are integral to the development of individualized sentencing. In *Roper v. Simmons*, 543 U.S. 551 (2005), the United States Supreme Court held "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Roper*, 543 U.S. at 578. Five years later, in *Graham v. Florida*, 560 U.S. 48 (2011), the United States Supreme Court held that "the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender." *Graham*, 560 U.S. at 75. Critical to the reasoning in each of these decisions was an emphasis on the need for individualized sentencing for juvenile offenders.

Two years later in *Miller*, the United States Supreme Court again revisited the area of juvenile sentencing schemes. The Court in *Miller* held, "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465. Importantly, although the Court held the mandatory nature of the sentence was unconstitutional, it noted that life without parole was still a viable sentence for a juvenile convicted of homicide. The *Miller* Court held that individualized sentencing requires "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. The Court noted that mandatory life without parole fails to allow a sentencing court to consider a juvenile's "chronological age and its hallmark features - among them, immaturity, impetuosity, and failure to appreciate risks and consequences[;]" as well as the juvenile's "family and home environment . . . from which he cannot usually extricate himself - no matter how brutal or

dysfunctional[;]" and "the circumstances of the homicide offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him." *Id.* at 477. The Court further noted a mandatory life without parole sentence fails to account for a juvenile's immaturity in dealing with the criminal justice system, and wholly "disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id.* at 478. Thus, the Court ultimately held that imposing mandatory sentences of life without parole on juveniles convicted of homicide violates "the Eighth Amendment's ban on cruel and unusual punishment." *Id.* at 489.

Following *Miller*, the States were left to determine a sentencing scheme to replace mandatory life without parole sentences for juveniles convicted of homicide. In Pennsylvania, *Batts I* presented this opportunity.[2] Batts asserted the sentencing scheme

---

[2] On June 24, 2012, while *Batts I* was pending, the General Assembly enacted 18 Pa.C.S. § 1102.1, a new sentencing statute for juveniles convicted of first-degree and second-degree murder. The statute provides:

> **§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer**
>
> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
>> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.
>>
>> (2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of life imprisonment without parole, or a term

of imprisonment, the minimum of which shall be at least 25 years to life.

**(b) Notice.--**Reasonable notice to the defendant of the Commonwealth's intention to seek a sentence of life imprisonment without parole under subsection (a) shall be provided after conviction and before sentencing.

**(c) Second degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the second degree, second degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of imprisonment the minimum of which shall be at least 20 years to life.

**(d) Findings.--**In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

> (i) Age.
>
> (ii) Mental capacity.
>
> (iii) Maturity.
>
> (iv) The degree of criminal sophistication exhibited by the defendant.
>
> (v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.
>
> (vi) Probation or institutional reports.
>
> (vii) Other relevant factors.

**(e) Minimum sentence.--**Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.

**(f) Appeal by Commonwealth.--**If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it

of Section 1102(a), imposing a mandatory sentence of life-without-parole for first-degree murder was unconstitutional in its entirety in light of *Miller*. Thus, Batts argued he was entitled to a remand for resentencing at which the judge would consider the *Miller* factors, prior to imposing an appropriate sentence for third-degree murder, the most severe lesser included offense. *Id.* at 294. The Commonwealth argued the sentencing statute was not constitutionally infirm, and that as a result of *Miller*, the judge now had discretion to impose a sentence of life-without-parole, or a sentence with the possibility of parole after a specified term of years. *Id.* at 295.

This Court held the entire statutory scheme for first-degree murder was not unconstitutional. *Id.* This Court further held that defendants whose judgment of sentence was not final at the time *Miller* was decided are "subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the court of common pleas upon resentencing." *Batts I*, 66 A.3d 297. Additionally, this Court recognized "the imposition of a minimum sentence taking [the *Miller*] factors into account is the most appropriate remedy for the federal constitutional violation that occurred when a life-without-parole sentence was mandatorily applied." *Id.* Individuals convicted of first-degree murder after the date of the *Miller* decision, pursuant to Section 1102.1, are "subject to high mandatory minimum sentences and the possibility of life without parole, upon evaluation by the sentencing court of criteria

---

finds that the sentence was imposed in violation of this section.

18 Pa.C.S. § 1102.1.

along the lines of those identified in *Miller*." *Id.* Accordingly, Batts' sentence was vacated and remanded for resentencing.[3]

In 2016, the United States Supreme Court decided *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), in which it held *Miller* announced a new substantive rule of constitutional law that applies retroactively. The States retained discretion to decide whether to resentence juveniles serving mandatory life without parole sentences, or whether to permit the offenders to be considered for parole. *Montgomery*, 136 S. Ct. at 736. The Court noted, "[e]xtending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences." *Id.* The Court concluded, "[i]n light of what this Court has said in *Roper*, *Graham*, and *Miller* about how children are constitutionally different from adults in their level of culpability, however, prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside of prison walls must be restored." *Id.* at 736-37.

Following *Montgomery*, Batts returned to this Court again in *Batts II*. In *Batts II*, this Court clarified that there is "a presumption against the imposition of a sentence of life without parole for a juvenile offender[,]" and to rebut the presumption the Commonwealth "bears the burden of proving, beyond a reasonable doubt, that the juvenile offender is incapable of rehabilitation." *Id.* at 411. Further, we held "the sentencing court's decision must take into account the factors announced in *Miller* and Section 1102.1 of the Crimes Code." *Id.* at 484.

---

[3] In a concurring opinion, Justice Baer noted that although the legislature specified that Section 1102.1 would apply to juvenile offenders convicted after the date of *Miller*, he believed the trial courts re-sentencing juveniles who preserved a *Miller* claim "would be wise to follow the policy determinations made by the legislature in its recent enactment." *Batts I*, 66 A.3d at 300 (Baer, J., concurring).

With the evolution of the law in mind, we return to the procedural history of the instant case. On August 22, 2012, Appellant filed a second, counseled, PCRA petition seeking resentencing pursuant to *Miller*. A conference was scheduled at which the PCRA court and the parties agreed to hold the petition pending guidance from the appellate courts on the applicability of *Miller*. After several continuances the PCRA court determined it was necessary to proceed on the petition, and on August 24, 2013, a hearing was held. Thereafter, on September 30, 2013, the PCRA court vacated Appellant's sentence, determining the sentence was illegal pursuant to *Miller*. Appellant was resentenced on June 24, 2014, to a term of life with parole, with a recommendation Appellant not be paroled until his 58th birthday. On July 2, 2014, the Commonwealth filed a post-sentence motion alleging the court had lacked authority to resentence Appellant in light of *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013) (holding *Miller* did not apply retroactively). The motion was denied the same day without a hearing.

The Commonwealth appealed from Appellant's resentencing asserting that *Miller* did not apply retroactively. The Superior Court agreed and vacated Appellant's sentence and remanded for re-imposition of Appellant's original sentence. *Commonwealth v. Machicote*, 122 A.3d 1144 (Pa. Super. 2015) (unpublished memorandum). On September 11, 2015, the court resentenced Appellant in accordance with the Superior Court's order to life without the possibility of parole.

On March 22, 2016, Appellant filed a third PCRA petition asserting his sentence was illegal in light of *Montgomery*. The PCRA court held a conference at which it vacated the September 11, 2015 sentence, and scheduled a sentencing hearing, which was held on August 19, 2016. The Commonwealth asked the trial court to impose a sentence of life without the possibility of parole noting its position that Appellant was "not amenable to rehabilitative efforts." N.T., 8/19/16 at 42. Counsel for Appellant urged the court to be

lenient and asserted pursuant to the mandates of *Miller*, a sentence of life without parole

should be reserved "for all but the rarest of juvenile offenders, those whose crimes reflect

permanent incorrigibility." *Id.* The sentencing court proceeded to sentence Appellant as

follows.

> THE COURT: I first take into account the comments set forth in my sentence order of June 24, 2014. I reviewed the PSI again. You've had five misconducts, but they were early, which is understandable. You've obtained your GED, which is appropriate. Crimes of this nature devastate all families involved. You were over 15. While your intent was not to kill, there was intent to hurt, and hurt severely in the way that he was beaten.
>
> The Supreme Court of the United States has put forth that only - - life without parole is appropriate in very limited circumstances where their conduct and who they are are [sic] such that you cannot return them to society. That does not apply in this case.
>
> This creates a great deal of confusion because where do we start? The Supreme Court of the United States in *Montgomery* case states - - simply says life with parole. Pennsylvania has not done that. I did that in the first sentence, and as I review it I'm not sure that that is appropriate for several reasons. One, it would permit parole at any time, and I do believe there needs to be a period of substantial incarceration. Two, it is extraordinarily unfair to the family of the victim because at any time they could be subject to a parole hearing, and I don't find that fair.
>
> I look at the statutes enacted after *Miller v. Kentucky*. Clearly, it is not binding on this Court, and I am not required to do so. But I'm confronted with the fact that if I give you less than that, you benefit from committing your murder earlier. That doesn't seem right. If I go beyond that, then you are being punished more because of your timing. That is also wrong. I do find persuasive the logic set forth in the amendments after the *Miller* case.

*Id.* at 45-47. Accordingly, the sentencing court sentenced Appellant to 30 years to life in

prison with credit served from November 10, 2003 to the date of sentencing. *Id.* at 48.

Appellant filed a timely notice of appeal. In his Superior Court brief, he asserted, (1) the sentence was unlawful under *Montgomery* as there was no statutory authority to impose life without parole on June 25, 2012, and thus he should be sentenced to the lesser included offense of third-degree murder, (2) the court erred in sentencing Appellant, a juvenile convicted of second-degree murder facing a potential life without parole sentence, without considering the *Miller* factors, and (3) the trial court abused its discretion in granting Appellant's request to hire an expert, while denying him a continuance to retain one. *Commonwealth v. Machicote*, 172 A.3d 595, 599 (Pa. Super. 2017).

The Superior Court affirmed.[4] The court first addressed Appellant's claim that his sentence was illegal. The Superior Court concluded that *Batts I* held that juvenile homicide offenders tried and convicted prior to the issuance of *Miller* are subject to a mandatory maximum sentence of life imprisonment as required by the previous version of Section 1102(a) and a minimum determined by the court of common pleas at resentencing. *Machicote*, 172 A.3d at 600. Further, the Court noted that in resentencing Appellant, the court adhered to this Court's reasoning in *Batts II*, that for "juvenile offenders for whom the sentencing court determines [life without the possibility of parole] sentences are inappropriate . . . sentencing courts look to the mandatory minimum sentences set forth in section 1102.1(a) for guidance in setting a minimum sentence for a juvenile convicted of first-degree murder prior to *Miller*.'" *Id.* at 601 (quoting *Batts II*, 163 A.3d at 443 n. 17). Ultimately, the Superior Court held that Appellant's thirty-years-to-life sentence was legal as "a trial court, in resentencing a juvenile offender convicted

---

[4] In its resolution of Appellant's issues the Superior Court cited to *Batts II* for authority. It is important to note, at the time of resentencing on August 19, 2016, the trial court was without the benefit of *Batts II*, decided on June 26, 2017.

prior to *Miller*, was constitutionally permitted to impose a minimum term-of-years sentence and a maximum sentence of life imprisonment[.]" *Machicote*, 172 A.3d at 601.

Addressing Appellant's second issue, the Superior Court noted that "[t]he *Batts* decisions make clear that, the court must consider the *Miller* factors in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences." *Id.* at 602 n.3. However, the Superior Court concluded that Appellant's challenge to the PCRA court's failure to consider the *Miller* factors was moot because life without parole was ultimately not imposed by the trial court. *Id.* After dismissing Appellant's argument as moot, the Superior Court addressed Appellant's claim as arguably raising a claim that the court failed to consider relevant sentencing factors, and proceeded to address the issue as implicating the discretionary aspects of his sentence. The Superior Court concluded the PCRA court had not abused its discretion in sentencing Appellant because the PCRA court "found persuasive the 'logic' of subsection 1102.1(c)(1)[,]" and Appellant's sentence was "compliant with Subsection 1102.1(c)(1) and *Batts II*[.]"[5] *Id.* at 603.

This Court granted review of the Superior Court's mootness conclusion to determine whether to comply with *Miller* and its progeny, a court sentencing a juvenile defendant for a crime for which life without parole is an available sentence must review and consider on the record the *Miller* factors adopted by this Court in *Batts I* and *Batts II*, regardless of whether the defendant is ultimately sentenced to life without parole. *Commonwealth v. Machicote*, 186 A.3d 370 (Pa. 2018).

---

[5] Although not relevant to the instant appeal, in Appellant's third and final issue, the Superior Court held "where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences, expert testimony is not constitutionally required." *Machicote*, 172 A.3d at 605 (citing *Batts II*, 163 A.3d at 431-32).

Appellant begins by noting that the *Montgomery* Court held that an assessment of the *Miller* factors "is a *mandatory* procedural step necessary to 'give[] effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." Appellant's Brief at 19 (citing *Montgomery*, 136 S. Ct. at 735). Thus, Appellant maintains the trial court's failure to assess the *Miller* factors was not moot, and the Superior Court's holding confuses the substantive right of a juvenile not to be sentenced to life without parole except in rare circumstances, with *Montgomery*'s procedural holding that the *Miller* factors must be assessed to guarantee individualized sentencing. *Id.*

Appellant further asserts "the sentencing court must expressly evidence its consideration of the *Miller* factors on the record." Appellant's Brief at 26. In support of his argument Appellant notes that the General Assembly has already adopted the framework because Section 1102.1(d) requires the *Miller* factors be considered on the record. Furthermore, in *Batts II*, we held the court shall consider and make findings on the record "after the sentencing court's evaluation of the criteria identified in *Miller.*" *Batts II*, 163 A.3d at 421.

The Commonwealth counters that *Miller* is inapplicable because under Section 1102.1, a juvenile convicted of second-degree murder does not face a potential life without parole sentence. Commonwealth's Brief at 11. On this premise, the Commonwealth asserts that Section 1102.1(d) sets forth the factors the sentencing court must consider "in determining whether to impose a sentence of life without parole under subsection (a) [for first-degree murder]." 18 Pa.C.S. § 1102.1(d). Thus, the Commonwealth argues subsection (d) has no applicability for juvenile offenders, such as Appellant, convicted of second-degree murder. Commonwealth's Brief at 11.

The Commonwealth concedes its agreement with a portion of Appellant's argument noting, "whether a trial court must consider the *Miller* factors when sentencing a juvenile facing a potential life without possibility of parole sentence, regardless of the ultimate sentence imposed - has been answered." Commonwealth's Brief at 16. The Commonwealth continues, "[t]he answer is "Yes," a trial court must consider the *Miller* factors when sentencing a juvenile facing a potential life-without-parole sentence, but this will only occur when a juvenile is convicted of first-degree murder." *Id.* The Commonwealth concludes that if Appellant had been sentenced to first-degree murder he would "indeed face a potential life-without-parole sentence, [and] the sentencing court would be mandated, pursuant to §1102.1(d) and *Batts II*, to consider the *Miller* factors prior to determining whether to impose a life-without-parole sentence[.]" *Id.* at 16-17. Alternatively, the Commonwealth argues that if the trial court was required to consider the *Miller* factors, the record evidence of the sentencing hearing reveals "serious consideration was given to all, or at least a strong majority, of the factors set forth in *Miller* and §1102.1(d) at the time of resentencing on June 24, 2014[,]" and that the PCRA court took into account the comments from the June 24, 2014 re-sentencing at the August 19, 2016 re-sentencing. *Id.* at 26.

In his reply to the Commonwealth's argument, Appellant notes that the Commonwealth "fundamentally agrees" with him that "'a trial court must consider the *Miller* factors when sentencing a juvenile facing a potential life-without-parole sentence.'" Appellant's Reply Brief at 2 (quoting Commonwealth's Brief at 16). However, Appellant fervently disagrees with the Commonwealth's assertion that he was not statutorily eligible to be sentenced to life without parole.

As a threshold matter, we must first determine our scope and standard of review. In *Batts II*, this Court recognized that "in the absence of the sentencing court reaching a

conclusion, supported by competent evidence, that the defendant will forever be incorrigible, without any hope for rehabilitation, a life-without-parole sentence imposed on a juvenile is illegal, as it is beyond the court's power to impose." *Batts II*, 163 A.3d at 435 (citations omitted). Because *Montgomery* announced a substantive rule of law, albeit with a procedural component, a failure to impose a sentence in compliance with the substantive rule implicates the legality of the sentence. *Montgomery*, 136 S. Ct. at 724 ("a court has no authority to leave in place a conviction or sentence that violates a substantive rule[.]") Accordingly, we "review the sentencing court's legal conclusion [regarding whether Appellant is] eligible to receive a sentence of life without parole pursuant to a de novo standard and plenary scope of review." *Batts II*, 163 at 435 (citing *Commonwealth v. McClintic*, 909 A.2d 1241, 1245 (Pa. 2006)).

Instantly, Appellant was sentenced to 30 years to life in prison for second-degree murder. Contrary to the Commonwealth's contention, Appellant was not subject to sentencing pursuant to Section 1102.1, but was properly sentenced pursuant to the earlier version of Section 1102, as he was convicted prior to June 24, 2012. As such, life without the possibility of parole was a viable sentence. Furthermore, at Appellant's sentencing hearing, the Commonwealth specifically stated "the Commonwealth recommends a sentence of life without the possibility of parole[,]" and proceeded to argue to overcome the presumption against imposing a sentence of life without the possibility of parole. N.T., 8/19/16, at 42. Thus, the record of Appellant's sentencing hearing reveals Appellant was facing a possible sentence of life without the possibility of parole. Having resolved this threshold dispute, the parties are essentially in agreement that the trial court was required to consider the *Miller* factors on the record.

As iterated throughout this opinion, one of the hallmarks of the line of United States Supreme Court cases pertaining to juvenile sentencing, is the notion that conviction for a

specific crime does not warrant the same sentence in all circumstances. The individualized sentence based on the criteria developed in *Miller* must be considered in each case. Thus, although the trial court imposed a sentence that is in line with Section 1102.1, the sentence did not evidence the required individualized consideration. In light of the foregoing, we conclude Appellant's sentence is illegal and must be vacated and remanded for resentencing. In so holding, we recognize that Appellant's sentence was based on the guidance available to the trial court at the time. The trial court looked to Section 1102.1 and imposed the statutory sentence for a juvenile convicted after June 24, 2012. Further, the trial court acknowledged that the *Miller* factors must be considered in determining whether the Commonwealth has met its burden to overcome the presumption against life without parole. The trial court's misstep was not considering the *Miller* factors on the record when the Commonwealth had asked for a sentence of life without parole, and when Appellant was exposed to said sentence as a result of his conviction prior to *Miller* and the statutory language of Section 1102.

We hold today, that when a juvenile is exposed to a potential sentence of life without the possibility of parole the trial court must consider the *Miller* factors, on the record, prior to imposing a sentence. The core reasoning behind this long line of ever-evolving case law has been the need to individualize sentences for the youngest offenders who had not developmentally matured. This requires a sentencing court to analyze an individual's specific characteristics and circumstances and to impose a sentence based on them. Thus, the Superior Court's conclusion that the issue is moot because Appellant was ultimately not sentenced to life without the possibility of parole was erroneous, as it effectively nullified the procedural protection set forth in *Montgomery* and solidified by this Court in *Batts II.*

Trial courts must consider, on the record, the *Miller* factors and Section 1102.1 criteria, in all cases where a juvenile is exposed to a sentence of life without parole. As the trial court in the first instance is in the best position to discover and develop this information, the trial court is required to make a record of the *Miller* factors at sentencing. This rule satisfies the United States Supreme Court's directive, and the subsequent rules adopted by this Court, that sentencing of juvenile homicide offenders must be individualized, and creates a record to aid the appellate courts throughout the appeal process.

Based on the foregoing, we conclude that the Superior Court erred when it held that the trial court's failure to address the *Miller* factors on the record was moot. In addition, we further determine that by failing to consider those factors on the record, the trial court erred and imposed an illegal sentence. Accordingly, the order of the Superior Court is reversed, the judgment of sentence is vacated, and the case is remanded to the Court of Common Pleas for resentencing.


Chief Justice Saylor and Justices Baer, Donohue and Wecht join the opinion.

Justice Todd files a dissenting opinion in which Justice Dougherty joins.