J-A12011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICKY BREEZE MOOREFIELD, | |
| Appellant | No. 709 WDA 2018 |

Appeal from the Judgment of Sentence Entered March 1, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0013363-1996

BEFORE:  BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED  AUGUST 6, 2019**

Appellant, Ricky Breeze Moorefield, appeals from the judgment of sentence of 40 years' incarceration to life imprisonment ("40-life"), imposed following resentencing for his 1999 conviction for first-degree murder, for which he had originally been sentenced to life without the possibility of parole ("LWOP").  Appellant challenges the discretionary aspects of his sentence.  After careful review, we affirm.

> On September 27, 1996, police were called to the scene of a shooting.  They found the body of Jason Wingfield, who had been shot three times in the head and face and once in the elbow. During their investigation, the police interviewed several people including Kevin Tuggles who ultimately told the police that he had seen Appellant shoot the victim.  Appellant[, who was 17 years old at the time,] was … arrested and interviewed by detectives. He gave both oral and audiotaped statements in which he admitted shooting Wingfield.  Both in his statement and in his testimony at trial, Appellant recounted a confrontation he had with Jeff Lowry a day or two before the shooting.  As a result of this confrontation and subsequent … conversations with Lowry and the

victim, Appellant stated that he believed either Lowry or the victim intended to kill him.

*Commonwealth v. Moorefield*, No. 301 WDA 2000, unpublished memorandum at 1-2 (Pa. Super. filed July 17, 2001). Following a jury trial, Appellant was convicted of first-degree murder and carrying a firearm without a license. On January 19, 2000, the trial court sentenced Appellant to a mandatory term of LWOP for first-degree murder. This Court affirmed his judgment of sentence, and our Supreme Court denied further review. *Commonwealth v. Moorefield*, 782 A.2d 1057 (Pa. Super. 2001) (memorandum), *appeal denied*, 808 A.2d 570 (Pa. 2002). Appellant subsequently filed several unsuccessful PCRA[1] petitions, none of which "are relevant to this appeal." Appellant's Brief at 15.

Appellant filed, *pro se*, his fourth PCRA petition on March 10, 2016, "seeking a resentencing hearing in light of the United States Supreme Court['s] decisions in" *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016).[2] The PCRA court appointed current counsel, who then filed an amended PCRA petition on Appellant's behalf. The Commonwealth conceded that Appellant was entitled to resentencing, and the PCRA court granted the petition.

_____

[1] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

[2] In *Miller*, the Supreme Court of the United States ruled that the Eighth Amendment prohibits mandatory LWOP sentences for juvenile offenders. In *Montgomery*, the Court held that *Miller* had announced a new substantive constitutional rule that applied retroactively on state collateral review.

A resentencing hearing was held on February 21, 2018. In addition to Appellant's testimony, the resentencing court heard testimony from his aunt, Beatrice Simpson; his wife, Tahnee Moorefield; his daughter, Camaya Moorefield; and a mitigation expert, Samuel K. Schachner, Ph.D. ("Dr. Schachner"). The Commonwealth called one witness, Agent Michael Glen of the Pennsylvania Department of Corrections. On March 1, 2018, the court resentenced Appellant to 40-life for murder.[3] Appellant filed a timely post-sentence motion on March 12, 2018, which was denied on April 12, 2018. He then filed a timely notice of appeal on May 11, 2018, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on June 5, 2018. The resentencing court issued its Rule 1925(a) opinion on August 22, 2018.

Appellant now presents the following questions for our review: "Did the Sentencing Court commit legal error and abuse its discretion when it resentenced Appellant, a juvenile-lifer, to 40[-]life?" Appellant's Brief at 4.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence

---

[3] The court assessed no further penalty for Appellant's conviction for carrying a firearm without a license.

appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. ***Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. ***Id.***

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Appellant has satisfied these prerequisites to appellate review of his discretionary-aspects-of-sentencing claim. He filed a timely notice of appeal and a timely post-sentence motion raising the issue(s) now presented in his brief. He also provided a Rule 2119(f) statement in his brief. Additionally, Appellant presents a substantial question for our review. A "claim that the sentence is manifestly excessive, inflicting too severe a punishment, … present[s] a substantial question. Moreover, the sentencing court's failure to set forth adequate reasons for the sentence imposed also raises a substantial

- 4 -

question." ***Commonwealth. v. Hicks***, 151 A.3d 216, 227 (Pa. Super. 2016)

(cleaned up). Accordingly, we may review the merits of Appellant's claim.[4]

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hoch***, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation

omitted).

Appellant argues that the resentencing court "ran afoul of the mandates

of ***Miller*** in four particulars" when it resentenced him to 40-life. Appellant's

Brief at 22. Recently, in ***Commonwealth. v. Machicote***, 206 A.3d 1110 (Pa.

2019), the Pennsylvania Supreme Court held that "when a juvenile is exposed

to a potential sentence of [LWOP] the trial court must consider the ***Miller***

factors,[5] on the record, prior to imposing a sentence." ***Id.*** at 1120. A

---

[4] In this regard, we reject the resentencing court's contrary conclusion that Appellant failed to present a substantial question for appellate review.

[5] As our Supreme Court stated in ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017), compliance with ***Miller***

> requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:

>> immaturity, impetuosity, and failure to appreciate risks and consequences[;] ... the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] ... the

sentencing court's failure to do so renders the imposed sentence illegal, even if the defendant is not ultimately sentenced to LWOP. *Id.*

Here, the Commonwealth did not seek imposition of LWOP. Thus, the resentencing court was not required to apply the *Miller* factors in crafting Appellant's new sentence. Nevertheless, the resentencing court considered the *Miller* factors when it imposed Appellant's new sentence of 40-life. *See* N.T., 3/1/18, at 9 ("There are also, of course, guidelines provided through the *Miller* case about things that we should look at when we are resentencing and some of those perhaps work in your favor and some of them don't."); *and see id.* at 9-16 (addressing individual *Miller* factors prior to imposing sentence). Accordingly, out of an abundance of caution, we will consider whether the resentencing court abused its discretion in applying the *Miller* factors in fashioning Appellant's sentence. However, it is clear that the resentencing court did not violate *Machicote*, as Appellant was never "exposed to a potential sentence of life without the possibility of parole[.]" *Machicote*, 206 A.3d at 1120.

_____

> circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] ... that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] ... [and] the possibility of rehabilitation ... when the circumstances [(the youthfulness of the offender)] most suggest it.

*Id.* at 431 (quoting *Miller*, 576 U.S. at 477-78).

Appellant first argues that the resentencing court abused its discretion by treating Appellant's age at the time of his crime (17) as an aggravating factor despite his expert witness' opinion that Appellant was far more immature than his chronological age:

> Here, notwithstanding that [Appellant]'s expert, Dr. Schachner, characterized him as a "pre-teen" at the time of the shooting due to his "limited experience of a moral compass" and "many impediments to higher level judgment and consideration of decision making," the [res]entencing [c]ourt thought it more important to think of [Appellant] as a near adult. It emphasized that [Appellant] was "not a 15-year-old boy . . . not a 14-year-old boy … [but] a 17 year old, close to 18 when this [shooting] occurred," as if his chronological age of 17 was a strike against him, or meaningful in any way in light of the expert analysis provided.
>
> Quite simply, the [res]entencing [c]ourt viewed [Appellant]'s age too simplistically, considering him more as if he were an adult than the immature child that he really was. In essence, therefore, the … [c]ourt erred in treating [Appellant]'s chronological age as if it were an aggravating circumstance, making him someone who's more worthy of a harsher sentence.

Appellant's Brief at 25 (footnotes omitted).

The resentencing court rejected this claim for the following reasons:

> With respect to [Appellant]'s claim that this court "minimized" his age and aligned him more with an adult than as a "pre-teen" as Dr. Schachner described him in his report, the court simply took note of the undisputed fact that [Appellant] was eleven (11) months['] shy of committing the crime as an adult. [Appellant] was born on August 22, 1979, and he committed the murder on September 27, 1996, when he was 17 years [and] 1 month old. The court further considered the facts that [Appellant] had admitted to Dr. Schachner during his interview regarding the circumstances of the crime (*i.e.*[,] planning the confrontation, firing multiple shots, changing clothes and fleeing the scene), and it found that his actions aligned more with the actions of an adult than that of a 10, 11 or 12 year old. []Psychological Report,

> 10/5/17, [at] 8[]; (Sentencing Transcript [("ST")], 3/21/18, [at] 55).
>
> Moreover, at the resentencing hearing, Dr. Schachner qualified his
>
> characterization of [Appellant] as a "pre-teen" when the Commonwealth confronted him with the specific facts of the murder. [*Id.*] Indeed, when the Commonwealth asked "how admittedly luring someone out into an alley, shooting them three times, changing their clothes afterwards … can be equated with the actions of an 11 or 12 or ten-year-old?", Dr. Schachner replied, "[w]ith those specific examples, they may be less related." [*Id.*] He explained that his "pre -teen" description was "[s]pecific to [Appellant's] ability to demonstrate executive functioning, cognitive ability, academic achievement and recognizing right or wrong." [*Id.*]

Resentencing Court Opinion ("RSCO"), 8/22/18, at 7.

We ascertain no abuse of discretion with regard to the resentencing court's consideration of Appellant's age at the time of the murder. First, the court was not required to accept Dr. Schachner's opinion at face value. Second, his opinion with regard to Appellant's effective age in terms of his maturity at the time of the murder was essentially impeached, at least in part. Third, Appellant's actual/chronological age is itself a relevant factor to consider under *Miller*; indeed, the court was required to consider his chronological age. *See Batts*, 163 A.3d at 431. Fourth, it would have been rational for the court to consider Appellant's actual age at the time of the crime as an aggravating factor. Just as it is reasonable to believe that a pre-teen presents a greater potential for rehabilitation, a corollary follows that a juvenile closer to the age of maturity may present relatively less potential for rehabilitation. Accordingly, we conclude that this aspect of Appellant's sentencing claim is meritless.

Next, Appellant argues that the resentencing court abused its discretion by not permitting him to "elicit the nature and circumstances of the underlying crime *from his perspective*." Appellant's Brief at 26 (emphasis added). Specifically, the court prevented defense counsel from eliciting Appellant's subjective views concerning the events that led up to the murder of Jason Wingfield. **See** N.T., 2/21/18, 89-93. Appellant specifically complains that he

> was foreclosed from answering the question [of] why he continues to maintain self-defense, and he was denied the opportunity to rebut the assertion that this somehow shows a lack of capacity for rehabilitation. [Appellant] appreciated that he didn't get to change the facts as the jury found them-which expressly rejected his claim of self-defense-but he wanted at least the opportunity to tell the [res]entencing [c]ourt why he acted the way he did, why he believed self-defense was at issue (rightly or wrongly), and why he still believes that to be the case.
>
> But that did [not] happen here. Rather[,] what happened was that the [res]entencing [c]ourt, which wasn't the trier of fact, got a narrow view of the underlying circumstances of this crime, without any first-hand perspective from [Appellant], and it was left with the Commonwealth's singular viewpoint as to why [Appellant] continued to maintain self-defense-*i.e.*[,] because he's "not rehabilitated" and he exhibits "a real lack of accountability." That singular perspective robbed [Appellant]'s resentencing proceeding of perspective and a full picture that was necessary to meting out a truly individualized sentence. In that regard, the [res]entencing [c]ourt erred.

Appellant's Brief at 31-32.

While the facts and circumstances of the underlying crime are certainly relevant matters when resentencing pursuant to **Miller**, Appellant fails to cite any authority for the proposition that Appellant's subjective view of those facts and circumstances are relevant or important factors. As such, we cannot

conclude that the resentencing court abused its discretion by refusing to hear from Appellant in that regard.

In any event, the resentencing court indicates that it "was well aware of [Appellant's] perspective on the matter by way of Dr. Schachner's testimony and his expert report, which contained incredibly detailed information from [Appellant] as to his background and his position regarding the circumstances of the crime." RSCO at 8. We agree with the resentencing court that, to the extent that Appellant's subjective beliefs regarding the murder were relevant to his resentencing, the court was aware of them. Moreover, Appellant fails to specify in his brief how his omitted testimony would have added to or corrected Dr. Schachner's report and/or testimony.[6] Accordingly, even if Appellant's subjective view of the facts and circumstances of this case were relevant, we would ascertain no abuse of discretion in the resentencing court's decision to preclude Appellant's testimony.

Next, Appellant contends that the court abused its discretion when it asserted that there "does not seem to be any suggestion that [Appellant was]

_____

[6] Appellant argues that "he wanted at least the opportunity to tell why he acted the way he did, why *he* believed self-defense was at issue (rightly or wrongly), and why he still believes that to be the case." Appellant's Brief at 31 (emphasis in original). However, Appellant does not detail those reasons in his brief, nor how those specific reasons would have suggested that a lesser sentence was appropriate. Appellant contends that in the absence of his perspective, the court "was left with the Commonwealth's singular viewpoint as to why he continued to maintain self-defense," that being that he was ostensibly not rehabilitated and that he lacked accountability. *Id.* at 31-32. Yet, Appellant provides no alternative in his brief but for the mere abstract notion that he might have provided a different theory for the court to consider.

unable to cooperate with [his] attorney or with the police." N.T., 3/1/18, at 11. Appellant argues that this "assertion was belied by Dr. Schachner's report...." Appellant's Brief at 32. Appellant points to statements in Dr. Schachner's report that Appellant was exceptionally immature for a 17 year old at the time of the murder, and the doctor's opinion that he was skeptical that Appellant truly comprehended the proceedings or the consequences of his inculpatory statements. *Id.* at 32-33.

The resentencing court responds:

> With respect to the claim that this court [glossed] over [Appellant]'s ability to cooperate with counsel or law enforcement at the time of trial, the issue before this court was not whether [he] deserved a new trial, but rather what sentence was appropriate for his crime. [Appellant] took the stand on his own behalf at trial and asserted his self-defense claim, which shows that he was able to adequately participate in his defense and trial strategy. In this court's estimation, [Appellant]'s admissions regarding his actions on the day of the murder indicate a degree of criminal sophistication which substantially weakens [his] suggestion that he was unable to adequately cooperate with counsel or law enforcement. The court also notes that [Appellant] was accompanied by his mother when he voluntar[il]y … surrendered to police after the murder.

RSCO at 8-9.

We do not agree that the record supports that Appellant was able to participate in a meaningful way in his own defense *merely because* he took the stand to express his self-defense. Nevertheless, there is very little indication in the record that Appellant's immaturity undermined the fairness of his trial or his participation therein in any significant way. Ultimately, the facts that Appellant both waived his ***Miranda*** rights and confessed in the

presence of his mother indicate that this particular ***Miller*** factor did not weigh strongly in Appellant's favor.

Finally, Appellant argues that the resentencing court took Dr. Schachner's findings out of context, and effectively treated what should have been mitigating factors as aggravating factors. We disagree. As accurately noted by the Commonwealth, the resentencing court "was not obligated to accept every statement made by [A]ppellant's expert. 'Furthermore, when expert opinion evidence is admitted, the factfinder is free to reject it, accept it, or give it some weight between the two.' ***Commonwealth v. Stephens***, 74 A.3d 1034, 1041 (Pa. Super. 2013)." Commonwealth's Brief at 20.

Appellant quibbles about specific statements made by the resentencing court as they relate to Dr. Schachner's findings, which incorrectly presumes that the court was bound by those findings, although it was not. Moreover, Appellant argues over minutiae, and in doing so misses the forest for the trees, as we conclude that the resentencing court provided, overall, a detailed and thoughtful analysis of the ***Miller*** factors as they related to Appellant's resentencing. ***See*** N.T., 3/1/18, at 8-16.

Moreover, 18 Pa.C.S. § 1102.1(a) provides, in pertinent part, as follows:

**(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of

- 12 -

imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S. § 1102.1(a).

Unfortunately, our legislature has failed to provide explicit guidance for situations where, as here, a defendant was originally convicted prior to June 24, 2012. However, our Supreme Court has indicated that, despite this legislative oversight, a "sentencing court should fashion the minimum term of incarceration using, as guidance, Section 1102.1(a) of the Crimes Code." **Batts**, 163 A.3d at 460. Here, Appellant was sentenced to 40-life, only 5 years' minimum incarceration more than the mandatory-minimum sentence provided by Section 1102.1(a)(1). Additionally, as noted by the Commonwealth,

> [I]t is noted that with the changes that occurred to Pennsylvania's Sentencing Code after **Miller**, a sentence … for a first[-]degree murder committed by a defendant such as [A]ppellant, would have an Offense Gravity Score of 15. With an Offense Gravity Score of 15, [and] if [A]ppellant's prior record score was [zero], the sentencing guidelines would provide a standard range sentence of thirty-five years to life as a minimum sentence, plus or minus five years for aggravating or mitigating factors. 204 Pa.Code [§§] 303.15 and 303.16(b).

Commonwealth's Brief at 11. Thus, under the sentencing guidelines, Appellant's sentence falls on the boundary between the standard and aggravated range.

Thus, we consider Appellant's sentence as a small deviation upward from the mandatory minimum sentence under Section 1102.1(a)(1), and a top-of-the-standard-range or bottom-of-the-aggravated-range sentence

under the sentencing guidelines. In light of this, it appears that the resentencing court only afforded slightly more weight to aggravating factors than it did to mitigating factors, and we ascertain no manifest unreasonableness in such a determination. To the extent that Appellant is merely complaining about the relative weight that the resentencing court afforded to these various factors, such a claim does not present a substantial question for our review. *See Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) (holding that an "argument that the trial court failed to give adequate weight to mitigating factors does not present a substantial question appropriate for our review").

For all the aforementioned reasons, we conclude that Appellant is not entitled to relief.

Judgment of sentence *affirmed*.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/6/2019