**[J-53-2019] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 18 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on 12/20/2017 at No. |
| | : | 660 EDA 2015 affirming the |
| v. | : | Judgment of Sentence entered on |
| | : | 10/24/2014 in the Court of Common |
| | : | Pleas, Philadelphia County, Criminal |
| MICHAEL FELDER, | : | Division at No. CP-51-CR-0014896- |
| | : | 2009. |
| Appellant | : | |
| | : | ARGUED: September 11, 2019 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                         **DECIDED: February 23, 2022**

In 2005, the Supreme Court of the United States issued its first in a series of decisions interpreting the Eighth Amendment's Cruel and Unusual Punishments Clause as it applies to juveniles who have been convicted of serious criminal offenses. In that case, *Roper v. Simmons*, 543 U.S. 551, 578 (2005), the Supreme Court held that it is unconstitutional to impose the death penalty on individuals who committed their crime(s) as juveniles. Then, in *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Court held that the Eight Amendment prohibits a juvenile convicted of a non-homicide offense from being sentenced to life imprisonment without the possibility of parole. The *Graham* Court explained that, although a "State is not required to guarantee" a juvenile's "eventual freedom," it must provide that juvenile with "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75.

The Supreme Court returned to this line of cases two years later in *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the Court held that the Eighth Amendment forbids sentencing schemes that automatically mandate life without parole sentences for

juveniles convicted of murder, because the mandatory nature of the sentence precludes a sentencing court from considering the juvenile's age and the hallmark features of youth, most notably the continuing nature of brain development during those formative years. *Id.* at 477. Invoking its prior Eighth Amendment jurisprudence, the Supreme Court explained that, "given all we have said . . . about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," particularly because of the difficulty "of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* at 479-80. In doing so, the *Miller* Court favorably cited *Graham*'s mandate that a juvenile must be given a reasonable opportunity for release from prison before his or her natural death, and extended this principle to certain juveniles convicted of murder. *Id.* at 479-80 (quoting *Graham*, 560 U.S. at 75).

Four years later, in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Supreme Court held that *Miller* announced a substantive, rather than procedural, rule of law that applied retroactively to cases pending on collateral review. Of particular significance to that determination, the *Montgomery* Court emphasized that *Miller* "drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." *Id.* at 209. The Court further stressed that, even though "*Miller* did not impose a formal factfinding requirement[,]" states are not "free to sentence a child whose crime reflects transient immaturity to life without parole." *Id.* at 211.

These four rulings—particularly the latter two—created a paradigmatic shift in juvenile sentencing. In the wake of that shift, triggered by *Miller* and *Montgomery*, Pennsylvania courts were tasked with re-sentencing a significant number of juveniles convicted of murder whose life without parole sentences suddenly were unconstitutional.

At that time, there was no framework in place to sentence a juvenile convicted of first- or second-degree murder to anything other than life without parole. The Supreme Court left the creation of procedures to implement *Miller* and *Montgomery* to the states. Accordingly, in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) (*Batts II*),[1] this Court established a set of legal criteria to guide the bench and bar. We held that the trial court must operate initially under a presumption against sentencing a juvenile to life without parole. *Id.* at 451-52, 483-84. To overcome that presumption, we explained, the Commonwealth first must provide reasonable notice to the juvenile defendant that it intends to seek such a sentence. *Id.* at 477, 484. Then, the Commonwealth must prove, beyond a reasonable doubt, that the homicide was the product of the juvenile's permanent incorrigibility—meaning that the child is functionally incapable of rehabilitation—and was not an act of the juvenile's transient immaturity. *Id.* at 472-77. We added another requirement to the *Batts II* criteria in *Commonwealth v. Machicote*, 206 A.3d 1110, 1120 (Pa. 2019), wherein we held that, "when a juvenile is exposed to a potential sentence of life without the possibility of parole," the sentencing court must determine whether the Commonwealth has satisfied its burden, and it must "consider the *Miller* factors, on the record, prior to imposing a sentence."

*Miller*, *Montgomery*, *Batts II*, and *Machicote*, in tandem with subsequent legislative enactments, *see e.g.* 18 Pa.C.S. § 1102.1, provided lower courts with much of the framework necessary to sentence juvenile murderers in a constitutional manner. However, (at least) one important legal question lingered: when did a term of years function as a *de facto* life sentence without the possibility of parole? We had interpreted

---

[1] In an earlier post-*Miller* case with the same name, this Court held that *Miller* did not preclude in all instances a life without parole sentence for juvenile offenders. *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013). Thus, our 2017 decision is commonly referred to as "*Batts II*".

*Miller* and *Montgomery* to require an examination of the juvenile's mindset to ascertain whether the murder was the product of transient immaturity or whether it was the result of the child's permanent incorrigibility. If it was the latter, then the trial court could impose a life without parole sentence. However, if it was the former, then a trial court had to impose a term of years consistent with *Graham* and *Miller*'s mandate that, although a "State is not required to guarantee" the juvenile's "eventual freedom," it must provide him or her with "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham* 560 U.S. at 75; *Miller*, 567 U.S. at 479-80. This requirement would prove illusory if, for instance, a trial court sentenced a juvenile to a minimum term of ninety years, which would eliminate any chance of the promised "meaningful opportunity" to be released from prison. As a minimum term of years increases, there eventually comes a point at which the sentence converts into the functional equivalent of a life sentence. But at what point does this conversion occur?

After oral argument in September of 2019, we were set to rule on that discrete question. It appeared that we were on the verge of establishing a near-complete model for sentencing juvenile murderers. Or, so we thought. Before we could issue an opinion, the Supreme Court of the United States granted *certiorari* in *Jones v. Mississippi*, 140 S. Ct. 1293 (2020), and we placed the instant case on hold. On April 22, 2021, the Supreme Court issued its decision in *Jones*, holding that, contrary to this Court's understanding, *Miller* did not require a sentencing court to make a separate factual finding that the juvenile's act was the product of his or her permanent incorrigibility before imposing a sentence of life without the possibility of parole. *Id.* at 1314-15. Instead, the Supreme Court construed *Miller* to prohibit only non-discretionary, automatic life without parole sentences on juveniles. A trial court may impose a life without parole sentence on a juvenile in a manner consistent with the Eighth Amendment, so long as the sentencing

procedure was discretionary in nature and afforded the sentencing court an opportunity to consider the juvenile's age in some substantive way. *Id.* at 1315-16.

All of our recent jurisprudence emanated from our understanding that *Miller* required a factual examination of the juvenile's act, with the sentencing court assessing whether that act was the product of transient immaturity or permanent incorrigibility. *Batts II* and *Machicote* provided a procedural framework to assist the court in making this determination. The present case was an opportunity to refine that framework even further. Then, *Jones* changed everything. The factual assessment that was the driving factor in our prior analyses is gone. So too is the notion that a life without parole sentence is available only after a rigorous process. After *Jones*, all that is required before imposing such a sentence is a discretionary process that includes age as a relevant sentencing factor. In other words, a life sentence in any case involving a murder committed by a juvenile does not *necessarily* violate the Constitution.

*Jones* has eliminated the need to devote any of our limited resources to this case. The moment that *Jones* was decided, any form of relief for Felder was foreclosed entirely. Moreover, the question posed by Felder was rendered unquestionably moot. As noted, he asks whether a fifty year to life imprisonment amounts to a *de facto* life sentence. This question falls at the end of the analytical line that the Supreme Court has erased. After *Jones*, the answer to Felder's question is simple: "it doesn't matter." A *de facto* life without parole sentence is not unconstitutional, regardless of whether Felder's murder was the product of transient immaturity or otherwise. There now exists no reason to attempt to ascertain when a term of years becomes a *de facto* life sentence. Accordingly, because the question that once appeared significant in our formerly developing jurisprudence now is moot and "not well-suited to facilitate our principal function of advancing the law,"

*Commonwealth v. Tighe*, 224 A.3d 1268, 1292 (Pa. 2020) (Wecht, J., concurring and dissenting), I would dismiss this case as improvidently granted.

The learned Majority presses forward anyway. Rather than deciding that Felder's question only existed in an Eighth Amendment landscape that has been razed to the ground and reconstructed in a wholly different form, the Majority instead decides that *Jones* "is dispositive of the issue presented here." Maj. Op. at 2. It is not. *Jones* does not dispose of the question of whether fifty years to life is a *de facto* life sentence without parole on the merits. To the contrary, *Jones* makes that question constitutionally irrelevant.

Mootness and constitutional irrelevancy aside, there is another compelling reason not to continue with this case: the analysis is not substantially prompted, or supported, by the parties' arguments. In their principal briefs, which predated *Jones*, both Felder and the Commonwealth focus upon the merits of the *de facto* life sentence question. Neither party had any reason to argue that *Miller*, *Montgomery*, or *Batts II* were wrongly decided, or that any of them should be reconsidered. No one at the time could have predicted that *Jones* would shatter the foundation upon which their arguments were based. Consequently, the parties' principal briefs shed no light on the state of the law post-*Jones* and are of little use to the instant discussion.

After *Jones* was decided, Felder filed an application asking this Court for permission to rest on his principal brief. The Commonwealth submitted a "no answer" letter to this Court. We denied Felder's application and, instead, on June 22, 2021, commanded the parties "to file supplemental briefs addressing the United States Supreme Court's decision in *Jones v. Mississippi*, ___ U.S. ___, 141 S. Ct. 1307 (2021), and its impact on the issue presented in this appeal." Order, 2/22/2021 (*per curiam*). Both parties complied with our directive and filed additional briefs. Neither was helpful.

Both Felder and the Commonwealth assert that *Jones* has no impact whatsoever on the outcome of this case. That being the state of the argumentation, it seems to me ill-advised to address the impact that *Jones* wrought upon Eighth Amendment jurisprudence in a case involving parties who believe it had none. I would await a case in which the respective parties willingly debate the key legal issue to reconstruct such an important aspect of the law.

The Majority does not just evaluate *Jones'* impact on our law. The Majority goes one step further and contemplates the post-*Jones* viability of *Batts II*. The Majority abrogates *Batts II* and finds "no choice but to dissolve those procedural requirements." Maj. Op. at 19. Neither party asks for a reevaluation of *Batts II*, and, more importantly, neither seeks an outright annulment of it. Once more, the principal briefs are not helpful, as the viability of *Batts II* could not have been at issue at that early point. The supplemental briefing provides little more justification for such a sweeping ruling. This too is understandable, because our mandate to the parties for additional briefing did not mention *Batts II*, let alone direct the parties to address its ongoing viability. Nonetheless, Felder maintains throughout his supplemental brief that *Batts II* was an exercise of this Court's state constitutional authority and, thus, can survive *Jones*' holding. The Commonwealth generally agrees with Felder that *Batts II* is an independent ruling from this Court that is not impacted by *Jones*. Stated otherwise, nobody asks this Court to overrule *Batts II*. To the contrary, both parties support its continued relevance.[2] In such circumstances, I would not relegate *Batts II* to the dustbin of history without full briefing from adversarial parties that have a vested interested in the outcome of this case. For the reasons stated above, Felder no longer has such an interest, because nothing we say

---

[2]     On April 23, 2019, we invited the Office of the Attorney General to submit an *amicus* brief to provide another perspective on behalf of the Commonwealth. The invitation went unanswered.

or do can afford him relief. Moreover, *Batts II* is not a single-issue precedent of narrow applicability. It is a complex, multi-faceted decision, one that drew authority from numerous sources, establishing a series of procedural protections for juveniles. Before unilaterally deciding that no aspect of that complicated decision can remain, I would first consider the informed input of interested parties.

I offer no opinion on the merits of any issue raised and resolved by the learned Majority. I do not dispute that each of those issues require this Court's attention. To be sure, it may be the case that the Majority correctly disposes of all relevant issues. The problem is that doing so in this case contravenes this Court's customarily restrained practice of waiting for cases in which the answers that we provide are responsive to the questions asked and supported by focused legal debate between the parties. Rather than using this case as a vehicle to go beyond the issues presented for review[3] and

_____

[3] The Majority takes issue with this characterization. The Majority claims that my premise is faulty, insisting that the question presented in this case necessarily implicates a comprehensive reconsideration of *Batts II*. *See* Maj. Op. at 19-20 n.14. Indeed, the Majority asserts that, "at bottom," Felder framed his claim as "whether he is entitled to relief under *Batts II*." However, this conclusion finds merit only if one focuses non-contextually upon the clause that is bolded by the Majority and by ignoring that which the Majority elects not to bold. The non-bolded language asks whether "a sentence of 50 years to life imposed upon a juvenile constitute[s] a *de facto* life sentence." *Felder*, 187 A.3d at 909 (Pa. 2018) (*per curiam*). The Majority now ignores that initial clause and reframes the case as one focusing merely upon whether *Batts II* remains good law. It is correct that Felder mentions *Batts II* in a subsequent clause, but that does not mean that we are free to ignore the primary clause and to construe the case however we may see fit. Felder's passing reference to *Batts II* as the prevailing law at the time in his question presented in no way "baked" a comprehensive review of that precedent into this case.

Proof of the true character of this case is in the briefing. If reconsideration of *Batts II* was "baked" into the case, and tethered to our review, one would expect to see at least one of the parties argue that. No one does in either the initial briefing or in the post-*Jones* briefing. In fact, Felder neither questions *Batts II*, nor contemplates its continued existence. Rather, Felder sets forth the basic premises of that decision as the governing law, and then spends the vast majority of his argument urging this Court to define the point at which a sentence becomes *de facto* life sentence. The only fair reading of Felder's principal brief is consistent with my premise: that his question for this Court

injecting consideration of a case that the lower courts did not anticipate and that the parties do not meaningfully address, and in the absence of any development of an independent basis to evaluate *Batts II*, the Court should allow the impact of *Jones* to be resolved in the normal course—with developed advocacy, reasoned opinions by the lower courts, and petitions for allowance of appeal. Restraint demands that we refrain from transforming this case beyond its legal circumstances into a vehicle to resolve even the most pressing questions.

I would wait for an appropriate case in which the Court might address these important and complicated matters, and I would dismiss the instant appeal as improvidently granted. Because the Majority presses on in the face of these patent deficiencies, I respectfully dissent.

---

focused entirely upon establishing the point in time at which the sentence violated (what we believed were) the mandates of *Miller* and *Montgomery*. Notably, the Majority points to no place in the initial briefing supporting its after-the-fact reconstruction of this case. The parties have never asked this Court to reconsider *Batts II*, either expressly or implicitly. It is the Majority that takes this case to places uncharted by the parties in their arguments.

The Majority also decides—again, on its own—that, even if the issue were moot, the case might "surely qualify" for an exception. Maj. Op. at 19-20 n.14. Respectfully, much like the rest of the Majority's analysis, this, too, is untethered to the parties' arguments, and a conclusion that I prefer to make only after those involved in the case have provided their respective positions.