J-A25035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERTO GONZALEZ JR., | : | |
| | : | |
| Appellant | : | No. 1861 MDA 2018 |

Appeal from the Judgment of Sentence Entered March 28, 2018
in the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0003107-1989

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 13, 2020**

Roberto Gonzalez, Jr. ("Gonzalez"), appeals from the judgment of sentence imposed following his resentencing pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012), and ***Montgomery v. Louisiana***, 136 S. Ct. 718 (2016),[1] on a 1990 conviction for first-degree murder, aggravated assault, recklessly endangering another person, criminal mischief, possessing instruments of crime, and criminal conspiracy.[2] After extensive review of the record, we affirm.

_____

[1] In ***Miller***, the Supreme Court of the United States ruled that the Eighth Amendment prohibits mandatory sentences of life without the possibility of parole ("LWOP") for juvenile offenders. ***Miller***, 567 U.S. at 489. In ***Montgomery***, the Court held that ***Miller*** had announced a new substantive constitutional rule that applied retroactively on state collateral review. ***Montgomery***, 136 S. Ct. at 736.

[2] 18 Pa.C.S.A. §§ 2502(a); 2702(a)(1), (4); 2705; 3304(a)(1); 907(a); 903(a).

Gonzalez's convictions arose out of events that transpired on October 7, 1989, when Gonzalez was seventeen years old. Gonzalez was one of several juveniles traveling in several vehicles on the way home from a party in Reading, Pennsylvania. During the drive home, Gonzalez and his friends became involved in a confrontation with another driver, Joby Cipolla ("Cipolla"). Gonzalez was under the influence of alcohol and marijuana. The vehicles came to a stop, and Gonzalez exited his vehicle and engaged in a physical confrontation with Cipolla, resulting in Gonzalez and three other juveniles surrounding Cipolla, punching and kicking him until he fell to the ground. There, Gonzalez ultimately struck Cipolla with a wooden pickaxe handle and damaged Cipolla's vehicle with the weapon before fleeing the scene. Cipolla sustained massive head injuries, and ultimately died from those injuries on October 26, 1989.

Gonzalez was arrested and arraigned in juvenile court on October 19, 1989. Following Cipolla's death, Gonzalez's juvenile charges were withdrawn, and he was charged as an adult. On July 25, 1990, a jury found Gonzalez guilty of first-degree murder, aggravated assault, recklessly endangering another person, criminal mischief, possessing an instrument of a crime, and criminal conspiracy. On October 24, 1990, he was sentenced to LWOP for first-degree murder, a concurrent term of 4 to 10 years in prison for criminal conspiracy, and an additional 1 to 2 years consecutively for criminal mischief.[3]

---

[3] The remaining offenses merged with these counts for sentencing purposes.

Following his convictions, Gonzalez pursued a timely direct appeal of his judgment of sentence, and thereafter filed nine petitions under the Post Conviction Relief Act ("PCRA")[4] between 1994 and 2014, all of which were denied.   After the United States Supreme Court's decisions in **Miller** and **Montgomery**, Gonzalez filed his tenth PCRA Petition, raising a claim pursuant to **Miller**.  Gonzalez was granted a resentencing hearing, which the trial court held on March 28, 2018.  At the hearing, the trial court heard testimony from Cipolla's brother, Gonzalez's middle school gifted-support teacher, a counselor from the facility in which Gonzalez was incarcerated, Gonzalez's sister, and from Gonzalez himself.   N.T. (Resentencing), 3/28/18, at 12-60.   The resentencing court also reviewed several misconduct reports related to Gonzalez's time in prison, written testimony from several of Cipolla's family members, as well as documentation related to certifications earned by Gonzalez while in prison.  **Id.** at 7-15; 47-49.

At the hearing, the Commonwealth requested a new sentence of 35 years to life in prison for the murder conviction, while Gonzalez requested a new sentence of 28 and a half years to life in prison, *i.e.*, time served.  **Id.** at 15, 61.   After hearing testimony and reviewing the submitted evidence, Gonzalez was resentenced to new terms of 34 years to life in prison on the

---

[4] **See** 42 Pa.C.S.A. §§ 9541-9546.

murder count, a consecutive 1 to 2 years for criminal mischief, as originally imposed, and 4 to 10 years concurrently for conspiracy, as originally imposed.

Gonzalez filed a post-sentence Motion, which was denied on October 31, 2018. Gonzalez proceeded to timely file a Notice of Appeal,[5] the trial court ordered Gonzalez to file a concise statement pursuant to Pa.R.A.P. 1925(b), and he timely complied. On February 8, 2019, the trial court issued its Rule 1925(a) Opinion.

Gonzalez raises the following questions for our review:

_____

[5] A notice of appeal must be filed within 30 days from the denial of a post-sentence motion. **See** Pa.R.Crim.P. 720(A)(2)(a). Here, Gonzalez initially filed a timely post-sentence Motion on April 3, 2018, and he requested and the court granted a 60-day extension to file an amended Motion. However, he did not file a 30-day extension pursuant to Pa.R.Crim.P. 720(B)(3)(b) (allowing judges, for good cause shown, to grant one 30-day extension for decision on the motion, and stating that a failure to decide on the motion within the extension period requires a denial of the motion by operation of law). The trial court did not issue an order denying the Motion by operation of law, pursuant to Pa.R.Crim.P. 720(B)(3)(a) and Pa.R.Crim.P. 720(B)(3)(c), until November 2, 2018. Gonzalez filed the instant Notice of Appeal on November 9, 2018. Our review of the record shows that while Gonzalez's Notice of Appeal was filed outside of the 30-day filing period, it is properly before this Court based on the apparent breakdown of court proceedings. **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007) (stating that "[t]he courts of this Commonwealth have held that a court breakdown occurred … where the clerk of courts did not enter an order notifying the appellant that his post-sentence motion was denied by the operation of law.").

1. Whether the [trial] court erred by imposing a sentence of 34 years-to-life without considering the constitutionally-required **Miller** factors[?[6]]

2. Whether the [trial] court erred and abused its discretion by failing to put on the record adequate reasoning for the sentences it imposed[?]

3. To the extent that the [trial] court considered the **Miller** factors, whether the [trial] court abused its discretion and imposed an excessive sentence because its consideration of the **Miller** factors was inadequate and erroneous[;] did not account for the presumption of immaturity[;] reduced culpability of and greater prospects for reform of the adolescent offender[;] and did not afford [] Gonzalez an individualized analysis of an appropriate sentence[?]

4. Whether the [trial] court erred and abused its discretion in imposing an unconstitutional life tail[?]

5. Whether the [trial] court erred in imposing a sentence for first-degree murder[,] rather than the most severe lesser[-]included offense for which a valid, constitutional sentencing scheme existed at the time of his conviction[?]

6. Whether the [trial] court's imposition of a consecutive sentence for criminal mischief violated double jeopardy prohibitions[?]

Brief for Appellant at 4-5 (footnote added).

In his first issue, Gonzalez argues that the trial court committed legal error by insufficiently considering the sentencing factors as outlined in **Miller**, **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) ("**Batts I**"),

---

[6] The Supreme Court of the United States listed several of the "hallmark features" that must be included when imposing sentences of LWOP, including immaturity, impetuosity, and failure to appreciate risks and consequences; family and home environment; the circumstances of the offense, including familial and peer pressure; inability to deal with police officers, prosecutors, or his own attorneys; and the possibility of rehabilitation (the "**Miller** factors"). **Miller**, 567 U.S. at 477-78.

*Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*"), and

*Commonwealth v. Machicote*, 206 A.3d 1110 (Pa. 2019). Brief for

Appellant at 15. In particular, he argues that the trial court failed to properly

individualize his sentence pursuant to *Miller* by failing to discuss the individual

*Miller* factors on the record. *Id.* at 15-16.

A claim that a sentencing court failed to comply with the requirements

in *Miller* is a challenge to the legality of the sentence. *Machicote*, 206 A.3d

at 1119. When reviewing the legality of a sentence, our standard of review is

*de novo* and our scope of review is plenary. *Commonwealth v. Seskey*, 170

A.3d 1105, 1107 (Pa. Super. 2017). A sentence must be vacated if it is found

to be illegal. *Commonwealth v. Rivera*, 95 A.3d 913, 915 (Pa. Super.

2014).

> In [*Machicote*], our Supreme Court revisited the circumstances in which a sentencing court must consider the *Miller* factors when resentencing a juvenile offender. In that case, the appellant was originally convicted of second-degree murder in 2004 for a crime committed when he was 17[,] and received a life-without-parole sentence as required by Section 1102 of the Crimes Code. At the appellant's resentencing hearing pursuant to *Miller* and *Montgomery*, the Commonwealth requested a life-without-parole sentence, but the sentencing court ultimately imposed a sentence of 30 years to life imprisonment. The court, however, did not consider the *Miller* factors as they pertained to the appellant on the record at the resentencing hearing, and the appellant argued on appeal that the failure to consider the *Miller* factors rendered his new sentence unconstitutional. The Supreme Court agreed, holding that a court that performs a resentencing pursuant to *Miller* and *Montgomery* of a juvenile offender exposed to a potential life-without-parole sentence must conduct an individualized sentencing with reference to the *Miller* factors, as well as the

> criteria listed in Section 1102.1(d), even where the sentencing court ultimately does not impose a life-without-parole sentence.

***Commonwealth v. Lekka***, 210 A.3d 343, 355 (Pa. Super. 2019) (footnote omitted).

In ***Lekka***, this Court addressed a resentencing similar to the instant appeal. There, the appellant was originally sentenced, as a 17-year-old, to LWOP in 1979. ***Id.*** at 347. At his resentencing hearing in 2017, he was resentenced to a term of 45 years to life in prison. ***Id.*** at 348. On appeal, Lekka argued, in part, that the sentencing court erred in not applying the ***Miller*** factors. ***Id.*** at 355. This Court disagreed, and determined that "[i]n cases where the Commonwealth does not seek a [LWOP] sentence, the application of the ***Miller*** factors is not required." ***Id.*** at 355-56 (citation omitted).

In this case, as in ***Lekka***, the Commonwealth did not seek imposition of LWOP at resentencing. Rather, the Commonwealth requested that Gonzalez be resentenced to a term of 35 years to life. N.T. (Resentencing), 3/28/18, at 14-15. As a result, Gonzalez was never "exposed to a potential sentence of life without the possibility of parole[.]" ***Machicote***, 206 A.3d at 1120; ***see also Commonwealth v. White***, 193 A.3d 977, 983 (Pa. Super. 2018) (stating that "a sentencing court must consider these ***Miller*** factors only in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences."). Accordingly, the resentencing court did not err in failing to consider the ***Miller*** factors when calculating Gonzalez's new sentence.

We will address Gonzalez's second and third issues together, as both involve the resentencing court's evaluation and articulation of his sentence. Gonzalez argues that the sentencing court abused its discretion by failing to properly articulate the reasons for imposing Gonzalez's sentence of 34 years to life for the murder conviction. Brief for Appellant at 17-18. He argues that the court failed to properly discuss the ***Miller*** factors and, as a result, the court imposed an excessive sentence. ***Id.*** at 18-21. Further, he argues that the court failed to discuss the reasons for its sentences for Gonzalez's conspiracy and criminal mischief convictions. ***Id.*** at 20. Finally, he argues that the resentencing court placed disproportionate weight on the crime itself, rather than on Gonzalez's various individualized mitigating factors, including his childhood circumstances, his immaturity at the time of the crime, his subsequent maturity and work towards rehabilitation, and his commendable plans after his release. ***See id.*** at 21-29.

The Sentencing Code requires that a sentencing court must "make[,] as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b).

> [A sentencing] court must state its reasons on the record at the time the sentence is imposed. Requiring the sentencing court to state its reasons at that time provides a procedural mechanism for the aggrieved party both to attempt to rebut the court's explanation and inclination before the sentencing proceeding ends, and to identify and frame substantive claims for post-sentence motions or appeal. … The reasons must be given in open court at the time of sentencing.

> [A]lthough a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, … the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender. A discourse on the court's sentencing philosophy, as it applies to the defendant before it, is not required. But the reasons must reflect the judge's consideration of the sentencing code, the circumstances of the offense[,] and the character of the offender.

*Commonwealth v. Flowers*, 149 A.3d 867, 875-76 (Pa. Super. 2016) (quotations and citations omitted).

At the outset, we note that Gonzalez's argument that the sentencing court failed to consider the *Miller* factors on the record is unavailing, as Gonzalez was not facing a potential term of LWOP. *See Lekka*, *supra*. More broadly, we find Gonzalez's argument that the resentencing court failed to properly express its reasons for imposing his new sentence to be unpersuasive. Here, the record shows that the resentencing court heard extensive testimony from multiple parties, including individuals who spoke to Gonzalez's intelligence, adjustment to prison life, work done while in prison, and his plans to become a productive citizen upon release. *See* N.T. (Resentencing), 3/28/18, at 12-33. Gonzalez himself testified extensively to his remorse concerning the crime, his activities while in prison, and his plans to assist others upon his release. *See id.* at 33-60.

While we recognize that the resentencing court's discussion of Gonzalez's new sentence was brief, we conclude that it complied with the dictates of Section 9721(b). The resentencing court stated the following:

> In consideration of the sentence in this matter[,] the [c]ourt notes that this is a case that is clearly replete with tragedy. We have the tragedy of the dysfunction of the family structure and societal

structure that allowed this to occur, the tragedy of the waste of the potential of [Gonzalez] for education and contribution to society over the last 28 years, but the [c]ourt is also cognizant of the loss which occurred when Mr. Cipolla was cruelly murdered, and I'd like to extend my condolences to the Cipolla family for once again having to suffer through the legal proceedings that have occurred here. The [c]ourt has taken into consideration all the evidence that has been presented at this [re]sentencing hearing[,] as well as the entirety of the trial file with regard to this case. While I am both gratified and impressed with all [of] the accomplishments of [Gonzalez] while incarcerated, I believe that while I factored all of that into the sentences that are about to be imposed, that there is much greater relevance of all that in future hearings before the parole board. I am hopeful that when released, Mr. Gonzalez, that you[,] in fact[,] become an asset to society[,] whether through the aspirations that you have testified to here today coming to fruition[,] or if life leads you to some other path, that, in fact, is a contribution to society. …

*Id.* at 65-66. Accordingly, we find no abuse of discretion, and Gonzalez is not entitled to relief on these claims.

In his fourth issue, Gonzalez argues that the sentencing court abused its discretion when it sentenced him to a maximum term of life in prison (his "life tail"). Brief for Appellant at 30. He argues that the court's imposition of a maximum sentence of life in prison creates a *de facto* life sentence because it was insufficiently individualized pursuant to **Miller** and **Batts II**. *Id.* at 30-31. He claims that imposing a maximum sentence of life in prison would effectively result in LWOP if the parole board denies parole. *Id.* at 32.

At the outset, we note that Gonzalez concedes that this Court has previously determined that a maximum sentence of life in prison is constitutional pursuant to our Supreme Court's holding in **Batts II**. **See Commonwealth v. Olds**, 192 A.3d 1188, 1198 (Pa. Super. 2018) (holding

that the imposition of a mandatory maximum sentence of life in prison for a juvenile defendant convicted of second-degree murder prior to **Miller** was constitutional); **Seskey**, 170 A.3d at 1109 (Pa. Super. 2017) (holding that a resentencing court must impose a mandatory maximum sentence of life in prison when resentencing a juvenile defendant who was convicted of first-degree murder prior to **Miller**). As a result, we are bound to determine that the resentencing court was required to sentence Gonzalez to a maximum term of life in prison, and thus find no abuse of discretion.[7]

In Gonzalez's fifth issue, he argues that the resentencing court erred when it sentenced him for first-degree murder, rather than sentencing him for the most severe lesser-included offense of third-degree murder. Brief for Appellant at 33. He argues that because **Miller** rendered the sentencing scheme by which Gonzalez was sentenced unconstitutional, there is no constitutional sentencing scheme in effect for pre-**Miller** juvenile offenders. **Id.** As a result, Gonzalez argues, he should have been resentenced under the only constitutional sentencing scheme that existed, which in this case would have been for third-degree murder. **Id.** at 33-34.

Our Supreme Court has capably addressed this issue in **Batts II**. Therein, the Court reiterated its earlier decision in **Batts I**, stating "[it has] found no support for the proposition that juveniles convicted of first-degree

---

[7] We note that Gonzalez states in his brief that he "raises this argument [before this Court] to ensure it is appropriately preserved for review under the federal constitution as it pertains to due process, criminal prosecutions, equal protection, and cruel and unusual punishment." Brief for Appellant at 31.

murder pre-*Miller* should be sentenced as though they were convicted of third-degree murder." *Batts II*, 163 A.3d at 457. While we recognize that Gonzalez concedes our Supreme Court's ruling in *Batts II*, and states that he is preserving this issue for a later appeal, we find no error in the resentencing court's formulation of his first-degree murder sentence.

In Gonzalez's final issue, he argues his consecutive sentence for criminal mischief violated his constitutional protection against double jeopardy. Brief for Appellant at 36. Specifically, he argues that because he was originally adjudicated guilty of criminal mischief as a juvenile, the re-filing of charges in the trial court as an adult, following Cipolla's death, violated the prohibition against double jeopardy. *Id.* at 37-38.

Though Gonzalez phrases this claim as an attack on an unconstitutional sentence, in essence he is attacking his 1989 criminal mischief *conviction* for which he was later re-sentenced to an identical term in 2018.[8] As stated previously, Gonzalez eventually sought relief under *Miller* through a PCRA petition, resulting in this Court remanding the case to the trial court for re-sentencing of the murder conviction for which he was originally sentenced to LWOP. At this stage, Gonzalez's only possible appealable issues following remand "would be [to] challenges to the sentence imposed."

---

[8] We note that Gonzalez had the benefit of a direct appeal from his original sentence in 1992. There, he alleged multiple errors by the trial court but, notably, did not allege a double jeopardy violation related to his criminal mischief conviction. *See Commonwealth v. Gonzalez*, 609 A.2d 583 (Pa. Super. 1992) (unpublished memorandum).

- 12 -

*Commonwealth v. Anderson*, 801 A.2d 1264, 1266 (Pa. Super. 2002) (citation omitted); *see also Commonwealth v. Lawson*, 789 A.2d 252, 253-54 (Pa. Super. 2001) (stating that when a case is remanded to resolve a limited issue, only matters related to that issue may be appealed). In other words, we have long held that the grant of relief for resentencing is limited, and does not entitle appellants to litigate claims unrelated to the resentencing. *See Anderson*, *supra*.

Here, Gonzalez does not challenge the sentence imposed, as the sentence was identical to the original sentence imposed in 1989. Gonzalez's only claim, therefore, must go to the underlying conviction itself. Because Gonzalez cannot file a second direct appeal attacking the underlying convictions for which he was re-sentenced pursuant to *Miller*, his appeal following remand is limited only to the issue of sentencing. *Id.* Accordingly, Gonzalez's double jeopardy claim is not properly before this Court, and we may not address the merits of his claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2020