J-S53021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN JONES JR. | |
| Appellant | No. 3495 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 17, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0001881-2002

BEFORE:  OLSON, J., STABILE, J. AND NICHOLS, J.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 28, 2020**

Appellant, Steven Jones, Jr., appeals from his judgment of sentence of thirty years to life in prison for second-degree murder,[1] a crime committed in 2002, while he was a juvenile.  Appellant argues that the sentencing court failed to consider Appellant's youth, mental development and potential for rehabilitation at the time of sentencing.  We affirm.

The sentencing court summarized the evidence adduced during Appellant's trial as follows:

> At about 9:15 p.m. on Sunday, April 20, 2002, [Appellant] and three others, Kareem Strickland, Brandon Cobb and Fareed Nelson, were together, standing outside of "Showell's Seafood Store" on Ninth Street in Chester.  The victim, Feras Cheikho, drove his Jack & Jill truck up the street.  Strickland flagged down the truck and asked his companions if they wanted to "snatch some ice cream."  The truck stopped and the four actors

---

[1] 18 Pa.C.S.A. § 2502(b).

approached. The actors engaged Cheikho, asking for ice cream. Cheikho asked for money. The interaction continued and [Appellant] asked Fareed Nelson whether he had a gun on him. Nelson handed [Appellant] a .25 caliber semi-automatic gun and [Appellant] put it in the pocket of his hoodie. [Appellant] said, "I'm about to get him."

The interaction continued with the actors asking for ice cream and Cheikho asking for money in exchange. [Appellant] pulled the gun from the pocket of his hoodie sweatshirt and demanded money from Cheikho, saying, "give up the fucking money. I ain't playing with you. This ain't no game." [Appellant] and Strickland continued to threaten Cheikho with [Appellant] pointing the gun at him. After claiming that he had no money, Cheikho capitulated and handed over a cardboard box that was filled with dollar bills.

Strickland and [Appellant] demanded more money. [Appellant] was holding the gun inside the truck window. He was directing Cheikho with the gun, jerking the gun toward him. Cheikho retrieved more cash from a black book bag in the truck and placed it in the cardboard box. Strickland took the money and [Appellant] continued to demand more. Strickland demanded ice cream. Cheikho turned, returning the book bag to the back of the truck, and [Appellant] shot him. Cheikho screamed and the four actors ran.

The bullet entered Cheikho's back and travelled through his left kidney, through his pancreas, stomach, small intestine, liver and into his abdominal wall. The gunshot wound caused his death. A firearms expert called by the Commonwealth testified. He examined the murder weapon and conducted "shock and drop tests" and opined, *inter alia*, that the weapon's trigger pull required six pounds of pressure to discharge, and that a bullet would discharge only if the trigger was pulled.

After the robbery, the actors shared the proceeds and hid the gun. The gun was found along with a second firearm secreted in the wall of an abandoned house. It was loaded with four live rounds of ammunition. [Appellant] was taken into custody on April 25, 2002. In the presence of his parents, he gave a statement which was read into the record at trial. [Appellant] stated that he came upon Strickland, Cobb and Nelson as they stood by the ice cream truck interacting with Cheikho. Strickland asked him to hold the gun and he took it. Strickland then demanded money from

- 2 -

Cheikho and "grabbed [Appellant's] arm and [his] arm went in the truck with the gun still in [his] hands." He admitted that the gun was in his hand and in the truck during the robbery but claimed that he did not point it at Cheikho. Rather, as Strickland demanded money from Cheikho, he lifted [Appellant]'s forearm up and said, "What you think I'm playing?" The gun went off "accidentally" and the four actors took off running. [Appellant] stated that he dropped the gun in the truck and that Strickland retrieved it and hid it.

Trial Court Opinion, 1/4/19, at 2-4 (with minor stylistic revisions). Appellant was sixteen years old on the date of the shooting.

Appellant was tried together with Strickland, and on January 10, 2003, Appellant was convicted of second-degree murder and robbery. On March 13, 2003, Appellant received the mandatory sentence of life confinement without the possibility of parole ("LWOP") for second-degree murder. In 2004, this Court affirmed Appellant's conviction on direct appeal in 2004.

On October 14, 2014, Appellant filed a PCRA petition challenging the constitutionality of his LWOP sentence based upon the United States Supreme Court's decision in **Miller v. Alabama**, 567 U.S. 460 (2012), that mandatory life sentences for juveniles were unconstitutional. The trial court dismissed Appellant's PCRA petition, and this Court affirmed. Appellant filed a petition for allowance of appeal with our Supreme Court. On February 12, 2016, the Court held:

the Petition for Allowance of Appeal is GRANTED on the issue of whether [Appellant's] sentence violates the prohibition against mandatory life sentences for juvenile offenders announced by the Supreme Court of the United States in **Miller** . . . As a result of the recent holding by that Court that **Miller** must be applied retroactively by the States, **see Montgomery v. Louisiana**, –––

- 3 -

U.S. −−−−, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the Superior Court's order is VACATED, and the case is REMANDED for further proceedings consistent with **Montgomery**.

**Commonwealth v. Jones**, 131 A.3d 487 (Pa. 2016).

On September 27 and October 4, 2018, the sentencing court held sentencing hearings. On October 17, 2018, the court resentenced Appellant to thirty years to life confinement on his conviction for second-degree murder committed when he was a juvenile. The court stated:

[T]he [c]ourt believes that [Appellant] has in fact shown genuine remorse for the tragic event in question. This does not however change the fact that a young man who had immigrated to this country in search of the American Dream was senselessly murdered in a very cruel and callous fashion. There was absolutely no justification or reason for the shooting in question. Cheikho did not in any way resist or attempt to confront the cowards who set out to rob him on this particular day. Unfortunately bullets do not come with erasers. Counsel has talked at some length about the lenient sentences of the co-defendants. However it was [Appellant], and [Appellant] alone that pulled the trigger that ended the life of a bright, hardworking and decent young man who was only 27 years of age at the time. The Court has considered the testimony that was presented during this matter by both the Commonwealth and the defense. Along with the extensive exhibits including but not limited to the expert reports. I have prepared a comprehensive order I would summarize is the basis of my decision in this matter.

N.T., 10/17/18, at 3-4. On the same date, the court entered a sixteen-page order into the record that explained its reasoning.

Appellant timely filed a post-sentence motion asserting that the court failed to consider several mandatory sentencing factors. On October 31, 2018, the sentencing court denied this motion. On November 30, 2018,

J-S53021-19

Appellant filed a timely notice of appeal.[2]  Both Appellant and the sentencing court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal:

1. Did the sentencing court abuse its discretion in failing to consider all of the factors of youth, mental development, and potential for rehabilitation as required under *Miller* and [*Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*")], when resentencing [Appellant] to thirty years to life confinement for second-degree murder committed when he was a juvenile?

2. Did the sentencing court abuse its discretion in improperly relying upon the minimum sentence set forth in 42 Pa.C.S.[A.] § 1102.1?

3. Did the sentencing court err in resentencing [Appellant] for second-degree murder committed when he was a juvenile without reviewing on the record at sentencing the factors required under *Miller*?

Appellant's Brief at 3.

_____

[2] Appellant's notice of appeal is time-stamped December 3, 2018, several days after expiration of the appeal deadline.  As a result, this Court ordered Appellant to show cause why his appeal should not be quashed as untimely. In response, counsel for Appellant asserted that she mailed the notice of appeal on November 28, 2018 via UPS, and that the court received the notice of appeal on November 30, 2018, within the thirty day deadline for appealing. Counsel attached a cover letter indicating the date of mailing on November 28, 2018 and a UPS tracking slip that confirmed the court received the notice on November 30, 2018.  Therefore, the notice of appeal was timely filed on November 30, 2018.  *Cf. Cogley v. Duncan*, 32 A.3d 1288, 1293 (Pa. Super. 2011) (document is filed when it arrives at prothonotary's office, regardless of the date the document is time-stamped).

- 5 -

These arguments relate to the discretionary aspect of Appellant's sentence. Where an appellant challenges the discretionary aspect of a sentence, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [pursuant to Rule of Appellant Procedure 2119(f), Pa.R.A.P. 2119(f); and (4) whether the concise statement raises a substantial question that the sentence is [not] appropriate under the [S]entencing [C]ode.

*Commonwealth v. Williams*, 198 A.3d 1181, 1186 (Pa. Super. 2018). Appellant satisfies these standards. His appeal is timely, he preserved these issues in a post-sentence motion, his brief includes a Rule 2119(f) statement of the reasons relied upon for allowance of appeal, and his concise statement raises a substantial question, namely whether the court failed to consider all relevant sentencing factors articulated by the United States Supreme Court in *Miller* and by our Supreme Court in *Batts II*. *See Commonwealth v. Brown*, 71 A.3d 1009, 1017 (Pa. Super. 2013) (where sentencing court did not apply *Miller* when sentencing juvenile defendant to LWOP for second-degree murder, judgment of sentence vacated and case remanded for resentencing under *Miller*).

Appellant first argues that the sentencing court failed to consider all factors required under *Miller* and *Batts II* before resentencing Appellant. The court was not required to consider the *Miller* and *Batts II* factors because

the Commonwealth did not seek, and the court did not impose, an LWOP sentence.

Recently, this Court held that sentencing courts need only consider the *Miller* factors when the court has the authority to impose an LWOP sentence **and** the Commonwealth requests an LWOP sentence. Where "the Commonwealth [does] not seek, and the sentencing court [does] not impose, [an LWOP] sentence, there [is] no error by the sentencing court in failing to consider the *Miller* factors." *Commonwealth v. Lekka*, 210 A.3d 343, 357 (Pa. Super. 2019) (citing *Commonwealth v. White*, 193 A.3d 977, 983 (Pa. Super. 2018)).

Here, the Commonwealth did not seek an LWOP sentence. It did not provide notice before sentencing of intent to seek an LWOP sentence, and it recommended a sentence of 41 years to life imprisonment in its sentencing memorandum and at sentencing. N.T., 9/27/18, at 200, 211. Thus, the sentencing court had no duty to consider *Miller* factors at sentencing.

Appellant relies on two decisions for the proposition that the sentencing court must consider *Miller* factors: *Commonwealth v. Brown*, 71 A.3d 1009 (Pa. Super. 2013), and *Commonwealth v. Hicks*, 151 A.3d 216 (Pa. Super. 2016). Neither case is on point. The defendant in *Brown* received an LWOP sentence before the Supreme Court decided *Miller*. We remanded for resentencing under *Miller*, but the defendant remained subject to a potential LWOP sentence. The trial court in *Hicks* sentenced the defendant to 35 years

to life imprisonment under Section 1102. Because Section 1102.1 was not in effect at the time of the defendant's crime, we remanded for resentencing "in accordance with *Miller*." *Id.*, 151 A.3d at 230. This was understandable, since it was theoretically possible that the defendant could receive an LWOP sentence on remand. Here, unlike in *Brown* and *Hicks*, Appellant was not subject to LWOP because the Commonwealth did not request it, rendering *Miller* inapposite.

Even if *Miller* were to apply, we still would affirm Appellant's sentence. The United States Supreme Court held in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. *Montgomery* held that *Miller* applied retroactively to cases on collateral review such as the present case. *Id.*, 136 S.Ct. at 732.

Shortly after *Miller*, our legislature enacted 18 Pa.C.S.A. § 1102.1 to prescribe the sentences to be imposed upon juveniles who are convicted of first- or second-degree murder on or after June 25, 2012, the date of *Miller's* issuance. Section 1102.1 provides that a juvenile offender convicted of second-degree murder who was less than 18 years old but at least 15 years old at the time of the offense shall be sentenced to a minimum of thirty years' imprisonment and a maximum of life imprisonment, while an offender who was under fifteen years old shall be sentenced to a minimum of 20 years' imprisonment and a maximum of life imprisonment. 18 Pa.C.S.A. §

1102.1(c). Section 1102.1 permits the court to impose a minimum sentence greater than provided in the statute. 18 Pa.C.S.A. § 1102.1(e). The statute also sets forth a separate set of factors that the court must consider when determining whether to sentence a juvenile offender to LWOP, including age-related characteristics such as the defendant's mental capacity, maturity and degree of criminal sophistication. 18 Pa.C.S.A. § 1102.1(d).

In **Batts II**, our Supreme Court held that to obtain an LWOP sentence when resentencing a juvenile offender in Pennsylvania, the Commonwealth must: (1) provide reasonable notice to the defendant before the sentencing hearing of its intent to seek a life sentence; and (2) overcome the presumption against the imposition of an LWOP sentence by proving beyond a reasonable doubt that the juvenile "forever will be a danger to society" and "exhibits such irretrievable depravity that rehabilitation is impossible." **Id.**, 163 A.3d at 455. Further, **Batts II** "devise[d] a procedure for the implementation of the **Miller** and **Montgomery** decisions in Pennsylvania." **Id.** at 451. **Batts II** directed that in order for an LWOP sentence to be valid, "the sentencing court's decision must take into account the factors announced in **Miller** and section 1102.1(d) of the Crimes Code."[3] **Id.** at 459. **Batts II** identified the **Miller** factors as, at a minimum,

---

[3] **See also Commonwealth v. Machicote**, 206 A.3d 1110, 1120 (Pa. 2019) ("trial courts must consider, on the record, the **Miller** factors and Section 1102.1 criteria, in all cases where a juvenile is exposed to a sentence of life without parole").

- 9 -

[the] juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Id.* at 421 fn. 5.

The record demonstrates that the sentencing court considered the *Miller* factors, including: Appellant's age at the time of the offense (Sentencing Order, 10/17/18, ¶ 17; Opinion at 12); his diminished culpability and capacity for change and rehabilitation (Order, ¶¶ 18, 33-34; Opinion at 12-13, 14-15); the circumstances of the crime (Order, ¶¶ 2-7, 12; Opinion at 15); the extent of Appellant's participation in the crime and the extent that peer pressure may have affected him (Order, ¶¶ 2-3, 6-7; Opinion at 12); his family, home and neighborhood environment (Order, ¶¶ 21-28); and his emotional maturity and development, mental health history, drug and alcohol history, and potential for rehabilitation (Order, ¶¶ 19, 29-30, 35-41; Opinion at 12-13). Although Appellant might be disappointed that the court did not place more weight on these factors, the weighing process is exclusively for the sentencing court, and we, as an appellate court, may not reweigh sentencing factors and substitute our own judgment of the proper sentence. *Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa. Super. 2012).

In his next argument, Appellant asserts that the sentencing court erred by basing his sentence on the mandatory minimum prescribed under Section 1102.1(c). Appellant states that the court was free to impose a sentence shorter than the thirty year minimum provided in Section 1102.1(c), because Appellant's crime took place before its effective date (June 24, 2012). Nevertheless, Appellant continues, "[t]here is no indication that the court considered the possibility of deviating downwards to reflect [Appellant's] intellectual disability, which, along with his youth, diminished his culpability." Appellant's Brief at 26-27. We disagree.

The sentencing court's opinion establishes that it was fully aware that it could impose a sentence beneath Section 1102.1(c)'s parameters, but it determined that a shorter sentence was not appropriate after full and fair examination of all relevant factors. The court wrote:

> Although Section 1102.1 is not applicable and a mandatory minimum sentence was not imposed[,] it bears noting that the Legislature has established a mandatory minimum sentence of thirty years when a defendant who is sixteen years old commits second degree murder. An individualized sentence was imposed in this case after consideration of all of the evidence offered at and in anticipation of sentencing. Evidence offered by [Appellant] regarding his mental deficiencies and his level of cognitive maturity and the time the murder occurred was considered by the Court. For this reason, the sentence imposed falls at the very bottom of the advisory parameters set by Section 1102.1 and the Sentencing Guidelines.

Trial Court Opinion, 1/4/19, at 18-19. We conclude that this was an appropriate exercise of the court's discretion, since it is not our role to reweigh

sentencing factors or substitute our own judgment of the proper sentence. *Bricker*, 41 A.3d at 876.

Finally, Appellant argues that the court failed to make findings on the record concerning the *Miller* factors during Appellant's sentencing hearing. This argument fails for two reasons. First, on-the-record findings concerning the *Miller* factors are not necessary unless a juvenile defendant is exposed to an LWOP sentence. *Machicote*, 206 A.3d at 1120. Appellant was not exposed to an LWOP sentence because the Commonwealth did not seek this sentence. Thus, no on-the-record findings were necessary. *Id.* Second, in any event, the court effectively made on-the-record findings during Appellant's final hearing by referring the parties to its sentencing order, N.T., 10/17/18, at 4, which in turn discussed the *Miller* factors.

For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/20

- 12 -